UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Quintin M. Littlejohn, | ) | C/A No. 7:10-1122-RBH-WMC |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **Report and Recommendation** |
| Col. Mummar Qaddifi, *leader of Libya, North Africa*, | ) | |
| Defendant. | ) | |

### Background of this Case

The plaintiff is under an order of pre-filing review. *See Graham v. Riddle*, 554 F.2d 133, 134-135 & n. * (4th Cir. 1977).[1] The plaintiff was confined in the South Carolina Department of Corrections until May of 2003, when he "maxed out" his sentence for his 1982 conviction for armed robbery entered in the Court of General Sessions for Cherokee County. The plaintiff currently resides in Gaffney, South Carolina. The defendant is the head of the government of Libya, a country on the northern coast of Africa.

In the complaint, the plaintiff alleges that the defendant aided the bombing of Pan-Am Flight 103 in 1988.[2] The plaintiff seeks a declaratory judgment, injunctive relief, damages for pain and suffering, damages for mental anguish, compensatory damages, and punitive damages.

---

[1]The order of pre-filing review was entered on July 10, 1998, by the Honorable G. Ross Anderson, Jr., United States District Judge, in *Quintin Littlejohn v. William J. Clinton*, President of the United States, Civil Action No. 6:98-1169-13AK. Judge Anderson's order authorizes the Clerk's Office to assign civil action numbers to the plaintiff's pleadings for docket control purposes.

[2]The plaintiff was an inmate of the South Carolina Department of Corrections in 1988.

*Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings. The review[3] has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979) (recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[4] *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). A litigant must plead factual content that allows the court to draw the reasonable inference that the defendant or respondent is plausibly liable, not merely possibly liable. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), which is cited in *Silva v. Spencer*, No. 08-cv-1686-H (LSP), 2009 U.S. Dist. LEXIS 61467, 2009 WL 2160632 (S.D. Cal., July 17, 2009).

---

[3]Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[4]*Boyce* has been held by some authorities to have been abrogated in part, on other grounds, by *Neitzke v. Williams*, 490 U.S. 319 (1989) (insofar as *Neitzke* establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

Even under this less stringent standard, the pleading is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition or complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's or petitioner's legal arguments for him or her, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Since Colonel Qadiffi is the head of the government of Libya, this suit is barred by the Foreign Sovereign Immunities Act of 1976 (as amended), 28 U.S.C. § 1602 *et seq. See, e.g.*, *Hirsh v. State of Israel and State of Germany*, 962 F. Supp. 377 (S.D.N.Y. 1997), *affirmed without opinion*, No. 97-7465, 133 F.3d 907, 1997 U.S.App. LEXIS 36435, 1997 WL 796153 (2nd Cir., Dec. 31, 1997). Furthermore, the Alien Tort Statute, 28 U.S.C. § 1350, does not provide a basis for the exercise of jurisdiction over a foreign sovereign. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) (generally, foreign nations are immune from suit in the United States for non-commercial, "public" acts).

Insofar as the plaintiff is complaining about the foreign policy of the United States with respect to Libya, this case is subject to summary dismissal under the "political question"

doctrine.[5] Under the "political question" doctrine, the United States District Court for the District

---

[5]It can be judicially noticed that United States foreign policy concerning Libya was affected by the bombing of a civilian (Pan-Am) commercial jetliner over Lockerbie, Scotland, in December of 1988, which resulted in the deaths of all 355 persons on the jetliner and eleven townspeople on the ground in Lockerbie. *See, e.g.,* Vera Gowlland-Debbas, *The Relationship between the International Court of Justice and the Security Council in Light of the Lockerbie Case*, 88 Am. J. Int'l L. 643 (Oct. 1994); and *Air Disaster at Lockerbie, Scotland on Dec. 21, 1988, In re*, 928 F.2d 1267, 1274 (2d Cir. 1991). The release in 2009 of one of the convicted bombers, Abdel Basset Ali al-Megrahi, received widespread attention in the media and legal circles. See Alan Cowell & A. G. Sulzberger, *Lockerbie Convict Returns to Jubilant Welcome*, New York Times, Aug. 21, 2009, at A4; and Carol A. Bahan, *International Terrorism: The Legitimization of Safe Harbor States in International Law*, 54 N.Y.L. Sch. L. Rev. 333 (2009/2010):

> On August 20, 2009, just eight years after his conviction, Scottish Justice Secretary Kenny MacAskill authorized al-Megrahi's release on compassionate grounds due to al-Megrahi's diagnosis of terminal prostate cancer. Despite apparent promises to the contrary, Libya welcomed al-Megrahi home with open arms and cheering hearts, likening to more of a hero's welcome rather than the return of a convicted terrorist. Similarly, at a meeting in Tripoli marking the tenth anniversary of the creation of the African Union, the African members of parliament gave al-Megrahi a standing ovation, with the consensus that "he is the victim of international injustice and a policy of double standards." However, reactions beyond Libya have been ones of agitation and disappointment by both governments and the family members of victims alike. Essentially, al-Megrahi's sentence roughly equals just eleven days in prison for each victim. Immediately after his release, it was suggested that al-Megrahi was a bargaining chip between Libya and the United Kingdom in their dealings for oil and commerce. Although MacAskill and British Prime Minister Gordon Brown vehemently denied any "double dealing" and maintained the independence of the Scottish government in its decision, U.K. Justice Secretary Jack Straw admitted that al-Megrahi's potential release under a prisoner transfer agreement did play a part in oil and trade negotiations with Libya. Even though al-Megrahi's request under the prisoner transfer agreement was ultimately denied by MacAskill, apparently due to U.S. objections and perhaps due to this alleged tainting, it is fair to infer that the Scottish government may have nonetheless felt pressure to release him on other grounds, namely compassionate release. If the prisoner transfer agreement with Libya did in fact help ensure a £550 million (approximately $900 million) oil deal with BP, Britain's largest company, then there would have likely been untold political and economic repercussions upon the denial of the prisoner transfer agreement absent other grounds for release. Thus, the mere possibility and apparent probability that al-Megrahi's release may have been for ulterior motives not only taints the fragile rule of law concerning international terrorism, it calls into question the ability of alternative legal and political mechanisms that could be utilized when the multilateral conventions fail.

54 N.Y.L. Sch. L. Rev. at 357-59 (footnotes omitted from quotation).

4

of South Carolina cannot address the plaintiff's claims relating to an alliance or alliances of the United States, its foreign policy toward other nations and international organizations, or matters handled by the United Nations Security Council or the International Court of Justice. *Goldwater v. Carter*, 444 U.S. 996, 1002-1006 (1979). The "political question" doctrine discountenances judicial interference with certain types of cases involving the other branches of the Government of the United States. *Baker v. Carr*, 369 U.S. 186, 211 (1962). *See also Dellums v. Bush*, 752 F. Supp. 1141 (D.D.C. 1990); and *Eckert International v. Government of the Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 171 (E.D. Va. 1993) (purpose of "political question" doctrine is "to prevent judicial pronouncements that would disrupt this country's foreign relations"), affirmed, *Eckert International v. Government of the Sovereign Democratic Republic of Fiji*, 32 F.3d 77 (4th Cir. 1994). *Cf. Flast v. Cohen*, 392 U.S. 83, 97 (1968) (federal judicial power usually limited to disputes capable of being resolved through judicial process); and *FCC v. Pacifica Foundation*, 438 U.S. 726, 735 (1978) ("[F]ederal courts have never been empowered to issue advisory opinions.").

Moreover, the plaintiff lacks standing to challenge matters relating to the bombing of Pan-Am Flight 103. *See Laird v. Tatum*, 408 U.S. 1 (1972); *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 482 (1982); *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972); *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, and that the merits of the case are irrelevant); *Frank Krasner*

*Enterprises, Ltd. v. Montgomery County, Maryland*, 401 F.3d 230, 234-36 & nn. 6-9 (4th Cir. 2005) (collecting cases on standing).[6]

### *Recommendation*

Accordingly, it is recommended that the District Court summarily dismiss the above-captioned case *without prejudice* and without issuance and service of process. *See* 28 U.S.C. § 1915. *See also In Re Prison Litigation Reform Act*, 105 F.3d 1131 (6th Cir. 1997) (pleadings by prisoners *and* non-prisoners should also be screened); and *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-364 (2nd Cir. 2000) ("District courts . . . are . . . capable of determining when an action is frivolous. Indeed, as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."). The plaintiff's attention is directed to the important Notice on the next page.

May 5, 2010  
Greenville, South Carolina

s/William M. Catoe  
United States Magistrate Judge

---

[6]A district court, in making a determination on standing to sue, should not improperly conflate the threshold standing inquiry with the merits of the claim raised in the case. *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308 (4th Cir. 2009).